# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., and FRIENDS OF THE LOCUST FORK RIVER, INC. <br><br> Plaintiffs, <br><br> v. <br><br> METRO RECYCLING, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) Case No. _____ ) ) ) ) ) ) ) ) |

## COMPLAINT

COMES NOW Plaintiffs Black Warrior Riverkeeper and Friends of the Locust Fork River, Inc. and file this Complaint against Defendant Metro Recycling, Inc. ("Metro") as follows:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over the claims set forth in this Complaint by virtue of Section 505 of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §1365 (a), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (power to issue declaratory

relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. § 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. § 1319(d), 1365(a) (civil penalties).

2. Venue is appropriate in the Northern District of Alabama pursuant to 33 U.S.C. § 1365 (c)(1) because the acts, omissions, and/or violations complained of herein occurred within the Northern District of Alabama.

### Notice

3. Pursuant to 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.3, Plaintiffs gave Metro notice of the violations alleged herein and their intent to sue on March 23, 2017, more than sixty (60) days prior to the filing of this Complaint. At the same time a copy of the notice was mailed to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Director of the Alabama Department of Environmental Management ("ADEM").  Service of notice on Metro was by certified mail.  Additionally, notice was mailed to the registered agent for such corporate defendant.  A copy of the notice letter is attached hereto as Exhibit 1.

4. Since the Plaintiffs gave notice, the violations complained of herein have not ceased.  Metro has not fulfilled all the requirements of the Second Settlement Agreement and Consent Decree (Second Decree) (Exhibit 2) approved and incorporated by the Court's March 6, 2014 Order (Exhibit 3).  No NPDES permit

has been issued to Metro for their facility. The EPA or the State of Alabama has not commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or a State for the violations set out herein. The EPA or the State has not commenced and diligently prosecuted an action under 33 U.S.C. §1319(g) or under a state law comparable to 33 U.S.C. §1319(g) for the violations set out herein. The EPA or the State has not issued a final order not subject to further judicial review and Metro has not paid a penalty assessed under 33 U.S.C. §1319(g) or under a state law comparable to 33 U.S.C. §1319(g) for the violations set out herein. Furthermore, the EPA or the State did not commence an action under 33 U.S.C. §1319(g) prior to Plaintiffs giving notice under 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.3 and this action is being filed before the 120th day after such notice was given.

## Parties

5.  Plaintiffs Black Warrior Riverkeeper, Inc., is a nonprofit membership corporation, with over four thousand members that is dedicated to the preservation and protection of the Black Warrior River and its tributaries. Riverkeeper actively supports effective enforcement and implementation of environmental laws, including the FWPCA and the Alabama Water Pollution Control Act (AWPCA), on behalf and for the benefit of its members.

6.      Plaintiff Friends of Locust Fork River, Inc. is a nonprofit membership corporation, with approximately 280 members, that seeks to actively preserve the natural integrity of the Locust Fork of the Black Warrior River in its free-flowing state, and to that end, the lifestyle of the community which surrounds it.

7.      Metro is incorporated in the State of Alabama and was formerly engaged in the operation of a landfill within the Northern District of Alabama.

## Nature of the Case

8.      This is an action for declaratory judgment, injunctive relief, penalties, and attorney fees to enforce provisions of the AWPCA and the FWPCA, regulations adopted pursuant to said Acts, a settlement reached under the jurisdiction of said Acts, and/or permits adopted and/or issued pursuant to said Acts.

9.      Metro owns and formerly operated a used tire disposal landfill, which discharges pollutants into waters of the United States, namely, an unnamed tributary of Whites Creek.  Whites Creek is a tributary of Locust Fork of Black Warrior River.  All the waters identified in this paragraph are waters of the state and the United States located in Blount County, Alabama.

10.     Metro is in violation of sections 301 and 402 of the CWA (33 U.S.C. §1311 and 1342) and sections 122.1 et seq. of Title 40 of the Code of Federal Regulations.  Metro Recycling, Inc. is also in violation of similar provisions of Alabama law.  *See* Code of Alabama 1975, § 22-22-9 and ADEM Admin. Code r.

335-6-6-.03. These laws require that no facility shall discharge pollutants to waters of the United States or waters of the State except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES"). Any discharge of pollutants without an NPDES permit is a violation of the AWPCA and the FWPCA, and is grounds for enforcement by civil action.

11. Members of Black Warrior Riverkeeper and Friends of Locust Fork River have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, Locust Fork of Black Warrior River downstream from this facility in the past, and they intend to do so in the future. They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in the Locust Fork of Black Warrior River downstream from this facility. The quality of these waters directly affects the recreational, aesthetic and environmental interests of certain members of Black Warrior Riverkeeper and Friends of Locust Fork River. The recreational, aesthetic, and environmental interests of certain of Plaintiffs' members have been, are being, and will be adversely affected by Metro's continued violation of the AWPCA and the FWPCA as alleged in this complaint, as well as Metro's failure to comply with all provisions of the Second Decree which was supposed to end Metro's continuing violations of the Clean Water Act.

12. Members of Black Warrior Riverkeeper and Friends of Locust Fork River now recreate less on Locust Fork of Black Warrior River because of Metro's illegal discharges. The violations alleged herein have had a detrimental impact on those members' interests because the violations have adversely affected and/or diminished aquatic life in White's Creek and have made it less suitable for fishing, wading, walking, observing nature, or relaxing. Said members would recreate more in and around White's Creek and the Locus Fork of the Black Warrior River but for Metro's illegal discharges of pollution. These members will recreate more often once Metro's illegal discharges cease.

## Past Proceedings

13. On August 21, 2007, Plaintiffs originally filed a Clean Water Act citizen suit under 33 U.S.C. §1365 to stop Metro's discharge of pollutants from its Blount County landfill into an unnamed tributary of White's Creek, a tributary of the Black Warrior River, without first obtaining an NPDES permit as required by the Clean Water Act, 33 U.S.C. §§1311 and 1342. *See Black Warrior Riverkeeper and Friends of the Locust Fork River v. Metro Recycling,* Case No. 2:07-cv-01527 (N.D. Al).

14. The parties settled this action on October 15, 2008, executing a Settlement Agreement and Consent Decree ("Original Decree") (Doc. 20 in Case No. 2:07-cv-01527) that was designed to stop Metro's tire landfill from discharging pollutants

from the landfill site into the unnamed tributary and obtain compliance with the Clean Water Act: "[t]here shall be no discharge of pollutants other than as specifically allowed under [an NPDES] permit."

15. Although the Original Decree contemplated that Metro would obtain an NPDES permit and operate the landfill as a going concern, Metro elected instead to close the landfill. With that decision, the closure plan became the logical vehicle to fulfill the requirements of the Original Decree as well as to separately meet applicable state law requirements governing landfill closure.

16. Under the Original Decree, Metro was required to implement "a run-off control system from the active and/or closed portion of the landfill to collect and control at least the water volume resulting from a 24-hour, 25 year storm event." Metro was prohibited from discharging any "pollutants other than as specifically allowed under an NPDES permit including, but not limited to Volatile Organic Compounds ("VOCs"), sediment, tar, oil and pieces of tire."

17. Metro's decision to pursue closure in no way altered Metro's primary responsibilities under the Original Decree, namely to complete and implement an approved engineering plan to include a runoff control system for the "active and/or closed" portion of the landfill and to stop the discharge of pollutants from the site without a permit.

18     Plaintiffs and Metro continued to negotiate the incorporation of the appropriate measures to stop the continuing discharge of pollutants from the site into a final landfill closure plan as well as the proper implementation of that plan to satisfy the terms of the Original Decree. These discussions culminated in a Second Settlement Agreement and Consent Decree ("the Second Decree") (Exhibit 2) (Doc. 51 in Case No. 2:07-cv-01527), which the Court entered on March 6, 2014.

19.    Among other obligations, the Second Decree required Metro to complete closure of the tire recycling landfill in accordance with a Modified Closure Plan approved by ADEM on July 2, 2013. Second Decree (Exhibit 2), ¶ B.

20.    The Second Decree provides in pertinent part that "[t]he Metro landfill must have a run-off control system from the closed landfill to collect and control at least the water volume resulting from a 24-hour, 25 year storm event" and that "[t]here shall be no discharge of pollutants from the site, including, but not limited to Volatile Organic Compounds (VOCs), sediment, tar, oil, and pieces of tire that do not conform with certain limits agreed to by the parties." *Id.* at ¶¶ H and I.

21.    Under the Second Decree, Metro agreed "to construct and maintain a Retention Basin in accordance with the Modified Closure Plan <u>to capture any runoff and/or seeps from the landfill</u>, which Retention Basin is also designed to allow some of the VOCs present in the landfill's seeps and surface runoff to evaporate." *Id.*, ¶ K (emphasis added). Moreover, "[t]he Retention Basin shall be

constructed according to industry standards, using Best Management Practices, and in a manner that avoids contributing additional sediment and/or other pollutants to the unnamed tributary of White's Creek." *Id.* (emphasis added).

22. Metro also agreed "to conduct quarterly water monitoring for VOCs, pH and Total Suspended Solids ("TSS") at an established, identified and consistent sampling point at the top of the Retention Basin spillway for a period of two years [from completion of closure], such effluent sampling to be conducted when there is flow. The VOC limits for the Retention Basin are to be in accordance with ADEM's preliminary screening values for VOCs present in groundwater *(see* Alabama Risk-Based Corrective Action Guidance Manual at pp. 101-08). The TSS limit for the Retention Basin is set at 35 mg/L; pH shall not be lower than 6.0 s.u. nor exceed 8.5 s.u …." *Id.* at ¶ L.

23. Finally, "[i]f sampling indicates that the Retention Basin is not working as engineered or intended, and the landfill site continues to discharge pollutants after the implementation of the Modified Closure Plan, Metro will take corrective action." *Id.*

24. On June 2, 2017, Metro's engineer apparently certified to ADEM that Metro had completed closure activities at the tire recycling landfill; however, upon information and belief, ADEM has not yet verified nor accepted that certification.

*See* http://app.adem.alabama.gov/eFile/ for Metro Recycling, Inc., Permit No.05-05, last accessed June 22, 2017.

25. As closure is pending and not yet completed, Metro has not begun the two year effluent sampling program required post closure by ¶ L of the Second Decree.

26. Metro has failed to cease the discharge of pollutants from the site, as required by ¶ I of the Second Decree.  For example, on January 28, 2016 Plaintiffs witnessed a discharge from the landfill's Retention Basin, which they sampled.  Test results returned February 3, 2016 measured total suspended solids at 89 mg/L even though the limit for Total Suspended Solids established by the Second Decree for any such discharge is 35 mg/L.  Second Decree, ¶ L.

27. Metro has failed to complete the proper design, construction and/or maintenance of the Retention Basin as required by ¶ K of the Second Decree.  On July 28, 2016, Plaintiffs observed the Retention Basin discharging during a site visit even though the State was in drought conditions at that time[1] and even though the basin is designed and intended to be a capture pond that only discharges during rain events.  In addition, there was a seep discharging directly from the toe of the Retention Basin contrary to the requirement to route all drainage through the Basin to provide settlement and treatment.

---

[1] U. S. Drought Monitor, released July 28, 2016, found at http://whnt.com/weather/maps-and-radar/bus-stop-forecast/ (last accessed June 9, 2017).

28. Despite the documented failure of the Retention Basin to perform as required by ¶ L of the Second Decree, upon information and belief, Metro has failed to take necessary corrective action to capture all runoff and/or seeps from the site or to stop the prohibited discharge of pollutants from the Retention Basin. *Id.*

29. Although Metro's obligations required by the Second Decree remain binding, the Court's Order of March 10, 2014 (Exhibit 3) specified that the Court would only retain jurisdiction over any dispute arising out of the agreement for one year, which has elapsed.

## COUNT ONE
### (Clean Water Act Violations)

30. Plaintiffs hereby repeat, reallege, adopt, and incorporate by reference paragraphs 1 through 29 herein above as if fully set out in this Count.

31. The State of Alabama, acting through ADEM, has implemented a federally authorized system for regulating the discharge of pollutants to waters of the state that operates in lieu of, or in conjunction with, the federal water pollution control program (*see* U.S.C. § 1342 (b)).

32. The State of Alabama has not issued Metro Recycling, Inc. an NPDES permit.

33. Metro Recycling, Inc. is in violation of the provisions referenced above by operating its facility in a manner which discharges pollutants to the waters of the

United States and waters of the state without a NPDES permit. These activities include, but are not limited to, the January 28, 2016 violation described in paragraph 26 herein.

34. Surface water runoff containing pollutants constitutes a "discharge" for purposes of the CWA when the runoff is collected or channelized by human activity. Metro has engineered and constructed a Retention Basin, contained by an earthen dam, as well as a system of terraced drainage ditches and basins, to channel and dispose of surface water runoff. The Retention Basin and the drainage system discharge surface runoff from the landfill into an unnamed tributary of White's Creek, a tributary of the Locust Fork of the Black Warrior River.

35  "Point sources" include surface water which is channeled or collected by man. 40 C.F.R. §122.2. The Retention Basin and its related system of drainage ditches are sufficiently "discernable, confined, and discrete" to constitute a point source under the CWA as defined by the CWA, 33 U.S.C. §1362(14). A system in which surface runoff from a landfill is channeled through ditches into a basin, and ultimately into an adjacent water of the United States, is an illegal discharge from a point source.

36. The activities described above, and in Plaintiff's notice letter, constitute a "discharge of pollutants" as that term is defined at 33 U.S.C. § 1362(12) and 40 C.F.R. § 122.2.

37.     Metro, which is a "person" pursuant to 33 U.S.C. § 1362(5) subject to the citizen suit provisions of the CWA, owns the property where the landfill is sited and the structures described in paragraph 34 are located.

38.     Metro does not have a permit, and is not authorized, under Section 301(a) and Section 402 of the CWA, to discharge pollutants from any point source at its landfill into the unnamed tributary of White's Creek, White's Creek or the Locust Fork of the Black Warrior River.

39.     Metro has violated the AWPCA and the FWPCA by discharging pollutants from a point source on January 28, 2016.

40.     Upon information and belief, the violations set out in this Count are continuing and ongoing and there is a reasonable likelihood that Metro will continue these or similar violations in the future.

## COUNT TWO
### (Injunctive Relief)

41.     Plaintiffs hereby repeat, reallege, adopt, and incorporate by reference paragraphs 1 through 40 herein above as if fully set out in this Count.

42.     The ongoing violations alleged herein will continue unless this Court orders and enjoins Metro to cease any and all illegal and unpermitted discharges. These violations have caused and will continue to cause Plaintiffs irreparable injury.

Plaintiffs have no adequate remedy at law for the injuries caused by Metro's continuing violations.

43. Therefore, Plaintiffs seek an injunction pursuant to section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), requiring Metro to halt the unpermitted discharge of pollutants from its landfill. These violations have an adverse impact on Black Warrior River and on the recreational, aesthetic, and environmental interests of the Plaintiffs' members in those waterways as set out in paragraphs 11 and 12 herein above.

44. An injunction will be in the public's interest in this case. Because Metro is in continuing violation of the law, the equities for an injunction weigh in Plaintiffs' favor.

45. Therefore, Plaintiffs bring this cause of action to enjoin Metro from engaging in any other affirmative act or conduct which would contribute to further violations of discharging without a permit or otherwise prevent the full implementation of the Second Decree.

## **COUNT THREE**
**(Enforcement of Clean Water Act Settlement Decree)**

46. Plaintiffs hereby repeat, reallege, adopt, and incorporate by reference paragraphs 1 through 45 herein above as if fully set out in this Count.

47. The Court's March 10, 2014 Order specifically incorporated the Second Decree: "the Court will enforce the settlement of the parties reflected in the Settlement Agreement and Consent Decree approved by the United States Department of Justice."

48. Metro's multiple breaches of the agreement represented by the Second Decree are a violation of the Court's Order, and thus ancillary jurisdiction to enforce the Clean Water Act settlement of the parties exists. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994).

49. Metro' failures to comply with the Second Decree will continue, unless the Court acts to protect its prior proceedings and vindicate its authority by ordering Metro to comply immediately with all terms of the Second Decree.

## **PRAYER FOR RELIEF**

A. Plaintiffs request the Court render a judgment finding and declaring that Metro has violated the AWPCA and/or the FWPCA in the manner and on the dates alleged in Count One herein and that such violations are illegal and that Metro is liable for any and all such violations.

B. Plaintiffs request and petition this Court to enjoin the violations and any and all illegal conduct by Metro set out and alleged herein.

C. Plaintiffs request and petition this Court to assess a $37,500.00 (thirty-seven thousand, five hundred dollars) civil penalty against Metro for each violation and each day of continuing violation for which Defendant is found liable.

D. Plaintiffs request and petition this Court to enforce all terms of the Second Decree and to require Metro to comply with all of its provisions, without exception.

E. Plaintiffs further request a judgment for all costs and for attorney fees as are reasonable under the circumstances.

F. Plaintiffs pray for such other, further or more general relief as this Court may deem appropriate.

Respectfully submitted,

*Eva L. Dillard*

Eva L. Dillard
ASB-4118-A59E
Attorney for Plaintiff
Black Warrior Riverkeeper, Inc.
710 37th Street South
Birmingham, AL  35222-3206
(205) 458-0095 Office
(205) 458-0094 Facsimile
edillard@blackwarriorriver.org