## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) | 2:17-cv-01050-LSC |
| METRO RECYCLING, INC., | ) ) ) | |
| Defendant. | ) | |

### Memorandum of Opinion

Before this Court is Metro Recycling Inc. ("Metro")'s Motion to Dismiss. (Doc. 4.) The Motion has been fully brief and is now ripe for decision. For the reasons described below, the Motion is due to be GRANTED.

### I.   Background

Metro owns and formerly operated a used-tire landfill, which discharges pollutants into tributaries of Whites Creek, which is itself a tributary of the Locust Fork of the Black Warrior River. Members of Black Warrior Riverkeeper ("Riverkeeper") and Friends of Locust Fork River ("FLFR") (collectively "Plaintiffs") seek to recreate in the Locust Fork of the Black Warrior River downstream from Metro's landfill. These parties have engaged in past litigation under the Clean Water Act ("CWA") over the discharge of pollutants from

Metro's landfill. This litigation has resulted in a number of settlement agreements between the parties.

Plaintiffs filed their first suit on August 21, 2007 to halt the discharge of pollutants from Metro's landfill without first obtaining a National Pollutant Discharge Elimination System ("NPDES") permit as required under federal and state law. The parties settled the action on October 15, 2008, executing a Settlement Agreement and Consent Decree (the "Original Decree"). The Original Decree included in its terms a requirement to discharge pollutants only as allowed under an NPDES permit.

Metro elected to close the landfill rather than continuing to operate it. This did not affect its obligations under the Original Decree, which included the creation of a "run-off control system" and ceasing further discharge of pollutants above a stated concentration from the site. Plaintiffs and Metro continued negotiations on how to ensure compliance with the Original Decree, which culminated in the Second Settlement Agreement and Consent Decree (the "Second Decree").

The Second Decree further modified and supplemented the duties of Metro stated in the Original Decree. It required Metro to complete the closure of the landfill in accordance with a Modified Closure Plan approved by the Alabama Department of Environmental Management ("ADEM"). The Modified Closure

Plan laid out the requirements that Metro needed to fulfill before it could complete its closure of the landfill. Metro also agreed in the Second Decree that it would build a retention basin that would capture runoff or seeps from the landfill. The basin would be constructed according to industry standards and Best Management Practices and in a way that would prevent additional sediment and pollutants from entering the tributary of White's Creek. After closure, Metro was to conduct quarterly water monitoring at the top of the retention basin spillway. If sampling indicated that the retention basin was not working as intended, Metro agreed to take corrective action.

On January 28, 2016 Plaintiffs witnessed a discharge from the landfill's retention basin, which they sampled. Test results that were returned on February 3, 2016, measured a Total Suspended Solids level of 89 mg/L, even though under the Second Decree the TSS level of any discharge was not to exceed 35 mg/L. Plaintiffs stated that the retention basin was not functioning properly upon their visit even though the state was in a drought condition at the time.

Pursuant to 33 U.S.C. §§ 1365(b)(1)(A) and 40 C.F.R. § 135.3, Plaintiffs sent Metro a notice of their intent to sue for the CWA violations alleged in this

Complaint dated March 23, 2017.[1] Plaintiffs sent the same notice to both the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Director of the Alabama Department of Environmental Management ("ADEM"). Plaintiffs' notice letter included the following:

> [O]n February 3, 2016, Riverkeeper conducted sampling of the outfall at the Retention/Settlement Pond during a site inspection. The parties agreed to a limit of 35 mg/L for Total Suspended Solids for any discharges at this outfall. Second Decree ¶ II.L. However, the sample test result for TSS on this date was 89 mg/L, over twice the stipulated limit.
>
> The failure to comply with the Second Decree's CWA requirements and the February 3, 2016 violation demonstrate a continuing pattern of pollution at Metro's landfill which degrades and threatens waters of the U. S. in violation of the CWA and state law, a pattern the previous litigation was supposed to stop.

The parties agree that the notice of intent states the violation occurred on February 3, 2016 when it actually occurred on Jan. 28, 2016.

## II.  STANDARD OF REVIEW

Metro has challenged the sufficiency of Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). The Court must "inquire into whether

---

[1] The Court may properly examine both the face of the Complaint and any documents attached to it when analyzing a motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Plaintiffs have attached to their Complaint (1) a copy of the notice of intent to sue, (2) a copy of the Second Settlement Agreement and Consent Decree, and (3) this Court's Order in the identically named case *Black Warrior Riverkeeper, Inc. v. Metro*, 2:07-cv-1527-LSC (N.D. Ala. Mar. 10, 2014). The Court considers these documents in its Opinion.

it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

In regards to Federal Rule of Civil Procedure 12(b)(6), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*." (emphasis added)). A claim for relief is plausible on its face when the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Conclusory statements of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

The process for evaluating the sufficiency of a complaint has two steps. The court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Conclusory statements and recitations of a claim's elements are thus disregarded for purposes of determining whether a plaintiff is entitled to survive a motion to dismiss. *Id.* at 678. Next, the court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A complaint's factual matter need not be detailed, but it "must . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Documents which are incorporated as exhibits to the complaint may be considered without converting a Fed. R. Civ. P. 12(b) motion to dismiss into a Fed. R. Civ. P. 56 motion for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)).

## III.  DISCUSSION

### A. COUNTS I & II: CLEAN WATER ACT VIOLATIONS

#### a.  SUFFICIENCY OF NOTICE OF INTENT TO SUE

Plaintiffs assert Metro is in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, for discharging pollutants into the waters of the United States or waters of the States without a permit issued pursuant to the NPDES. They seek damages and an injunction against further violations by Metro. Before the Court can reach the sufficiency of Plaintiffs' allegations, it must determine whether Plaintiffs have complied with the CWA's notice-of-intent requirements under § 1365(b). For Plaintiffs' counts alleging CWA violations to avoid dismissal, they must comply with § 1365(b). Section 1365(b) provides, "No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . ." 33 U.S.C. § 1365.

*Hallstrom v. Tillamook County* interpreted a provision in the Resource Conservation and Recovery Act ("RCRA") which contains similar wording to § 1365(b). *Hallstrom* held that the RCRA's 60-day notice-of-intent requirement was mandatory. 493 U.S. 20 (1989). Thus when a plaintiff does not send a notice of

intent sixty days prior to beginning a suit, her complaint must be dismissed. Because § 1365(b) of the CWA is a "direct analogue" of the notice-of-intent provision of the RCRA, the Eleventh Circuit has held "the 60-day notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." *Nat'l Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991). "If a plaintiff fails to comply with this notice requirement where it is applicable, the district court is required to dismiss the action." *Id.* at 1097-98.

The parties agree Plaintiffs have sent Metro, the Administrator of the EPA, the Regional Administrator of Region IV of the EPA, and the Director of ADEM notice-of-intent letters sixty days before commencing this suit. Their dispute, therefore, is not about whether Plaintiffs have failed to comply with mandatory *statutory* requirement of sending notice-of-intent letters as stated in *Hallstrom* and applied to the CWA by *ABC Rail Corp.* Instead the parties argue about whether Plaintiffs' notice of intent complies with 40 C.F.R. § 135.3, which was created by the Administrator of the EPA pursuant to authority granted to him by 33 U.S.C. § 1365(b). The Administrator of the EPA specified that notices of intent:

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged

violation, *the date or dates of such violation*, and the full name and address of the person giving the notice.

40 C.F.R. § 135.3 (emphasis added).

The chief defect in Plaintiff's notice of intent is an erroneous statement of the date on which Metro's violation of the CWA occurred. The parties agree that the actual date that Plaintiffs collected the run-off from Metro's retention basin was on January 28, 2016.  Test results taken from that sample were received on February 3, 2016, and indicated a heightened TSS. The parties further agree that the notice of intent stated that the violation of the CWA occurred on February 3, 2016—and not on the date the Plaintiffs actually observed and collected run-off from the retention basin. (*See* Doc. 4-1 at 3; Doc. 9 at 6 n.2.)The only disagreement is whether this error renders the Plaintiffs' notice of intent insufficient to comply with 40 C.F.R. § 135.3.

The parties disagree over the standard of review of the notice of intent's terms for compliance with 40 C.F.R. § 135.3. In reviewing a notice of intent letter for compliance with 40 C.F.R. § 135.3, *National Parks & Conservation Ass'n, Inc. v. Tennessee Valley Authority* stated that "[t]he notice requirements are strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed." 502 F.3d 1316, 1329 (11th Cir. 2007). The issue the Court faces is the somewhat contradictory task of attempting to "strictly construe" a

regulation that requires the notice of intent to "*include sufficient information* to permit the recipient to identify . . . the date or dates of such violation. 40 C.F.R. § 135.3 (emphasis added); *see also Carney v. Gordon Cty., Georgia*, No. CIVA 4:06CV36 RLV, 2006 WL 4347048, at *5 (N.D. Ga. Sept. 12, 2006) ("One other difficulty with requiring 'strict compliance' with section 1365 and 40 C.F.R. § 135.3 is that section 135.3 itself uses the language '*sufficient information* to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated.'").

The Eleventh Circuit has found two purposes for the notice-of-intent requirement. As stated above, one purpose is to give the alleged violator the opportunity to correct any violation and avoid suit. *Nat'l Parks & Conservation Ass'n, Inc.*, 502 F.3d at 1329; *see also ABC Rail Corp.*, 926 F.2d 1099. "[A]nother purpose behind the notice requirement of § 1365 is to effectuate Congress's preference that the Act be enforced by governmental prosecution." *ABC Rail Corp.*, 926 F.2d 1099.

*Nat'l Parks & Conservation Ass'n* has held a notice-of-intent letter does not comply with 40 C.F.R. § 135.3 when its allegations of fact are overbroad. In *Nat'l Parks & Conservation Ass'n*, the plaintiffs' notice of intent letter alleged violations of the Clean Air Act at ten of defendant's coal-fired power plants stretched across

three states. 502 F.3d at 1328. Specifically, the notice of intent letter only generally alleged the defendant violated "all of the requirements of Subpart Da [40 C.F.R. §§ 60.40da-52da]," which set emissions standards for several different pollutants created by electrical utility steam generators. *Id.* at 1329-30. In the same vein, the plaintiffs did not identify a specific time period in which the violations occurred, instead stating that defendant had "failed every day" to comply with the EPA regulations over a twenty-year period. *Id.* at 1330. *Nat'l Parks & Conservation Ass'n* held that the overbroad assertions concerning the date of violation and which pollutants caused such violations did not satisfy the notice requirement under 40 C.F.R. § 135.3:

> The language of the regulation does not suggest that the notice may be good enough if it generally orients the agency or violator as to the type of violation . . . . [T]he recipient of the notice must understand from the notice what the citizen is alleging—not what the citizen could allege if the citizen knew more or cared about other possible transgressions.

*Id.* at 1330 (quoting *Karr v. Hefner*, 475 F.3d 1192, 1200-01 (10th Cir. 2007)).

This Court recently dismissed claims brought under the citizen suit provision of the CWA for failing to give sufficient notice under 40 C.F.R. § 135.3. *See Grayson v. Ala. & Gulf Coast Railway, LLC*, 7:15-cv-1662-LSC, 2016 WL 397461 (N.D. Ala. Feb. 2, 2016). In *Grayson*, the plaintiffs' notice of intent expressly stated that the plaintiffs intended to sue for violations of 33 U.S.C. § 1321. *Id.* at *1.

However, that code section could not be enforced by a citizen suit, and the plaintiffs instead brought suit under a different code section, 33 U.S.C. § 1311. *Id.* In dismissing the plaintiff's claim for failing to comply with § 1365(b) and 40 C.F.R. § 135.3's requirements, this Court stated "defendants could not have reasonably understood that plaintiffs were alleging violations of a provision different from the one cited and quoted in the notice letter." *Id.* at *3.

Whether Plaintiffs' specific mistake in stating the date of the violation in their notice of intent prevents them from suing under § 1365(b) has not been addressed directly by the Eleventh Circuit. It is clear that the notice of intent's compliance with the requirements of 40 C.F.R. § 135.3 is strictly construed. *Nat'l Parks & Conservation Ass'n*, 502 F.3d at 1329. Plaintiffs urge the Court to adopt the more relaxed standard under *Carney v. Gordon Cty., Ga.* that the notice be "sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." 2006 WL 4347048, at * 5. But *Carney v. Gordon Cty., Ga.* very clearly indicated that it was not seeking to follow the "strict compliance standard" that the Eleventh Circuit has since adopted. *Id.* (adopting the Seventh Circuit's "sufficiently specific" standard without adopting either the "substantial compliance" or "strict compliance" standard).

Nor can the Plaintiffs rely on Metro's actual knowledge of Plaintiffs' claim or presence during Plaintiffs' testing, as actual knowledge has no bearing on the sufficiency of the notice-of-intent letter.[2] *Nat'l Parks & Conservation Ass'n*, 502 F.3d at 1330 ("[Plaintiffs] cannot rely on [defendant's] participation in the EPA administrative action involving similar allegations to substitute for the lack of specificity in their letter." (citing *Save Our Health Org. v. Recomp of Minn., Inc.*, 37 F.3d 1334, 1337–38 (8th Cir. 1994) (complaint dismissed because plaintiff failed to include alleged violations in notice, even though plaintiff claimed defendant had independent knowledge of violations))). Like in *Grayson v. Ala. & Gulf Coast Railway, LLC*, where the plaintiff misstated the statute he sought to recover under, here the Plaintiffs have identified the incorrect date of Metro's violation. 2016 WL 397461, at *3. As the Court strictly construes the requirements of 40 C.F.R. § 135.3, it holds Plaintiffs' notice of intent did not have "sufficient information to permit [the recipients] to identify . . . the date or dates of such violation" because the notice of intent letter gave the wrong date of the violation. Because Plaintiffs have not complied with the jurisdictional prerequisite as stated in 33 U.S.C. § 1365

---

[2] Because the notice-of-intent requirement exists to encourage governmental action as much as private compliance, Metro's "actual knowledge" is not sufficient even if the Court adopted the standard that Plaintiffs urge it to.

and   40 C.F.R. § 135.3, Counts I and II are due to be DISMISSED from the Complaint without PREJUDICE.

## B. COUNT III: ENFORCEMENT OF THE SECOND DECREE

In addition to the CWA violation alleged under Counts I and II, Plaintiffs allege Metro is liable for violating the Second Decree. As a preliminary step, the Court must find that it has subject matter jurisdiction to hear the parties' dispute concerning the Second Decree. Plaintiffs argue the Court may hear the dispute as part of its ancillary jurisdiction to enforce its Orders in the previous litigation between the parties.

In *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), the parties settled a federal lawsuit based on diversity jurisdiction involving state law claims. The parties arrived at an oral agreement settling all claims and recited the agreement before the district court on the record. They then submitted a stipulation of dismissal. The district court signed an order putting the stipulation of dismissal into effect, but did not reserve jurisdiction over the settlement agreement. *Id.* at 375. The parties subsequently disagreed about their obligations under the settlement agreement and moved the district court to enforce the agreement. *Id.*

*Kokkonen* held the district court does not have ancillary jurisdiction over enforcement of a settlement agreement unless it has explicitly retained jurisdiction over the agreement in its order putting the agreement into effect. *Id.* at 380. In making that holding, *Kokkonen* likewise stated that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. Thus, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

In earlier litigation between Plaintiffs and Metro, the Court granted the parties' motion to enforce the settlement between the parties that was reflected in the Second Decree and ordered that the Court would retain its jurisdiction for one year. *See* Order, *Black Warrior Riverkeeper, Inc. v. Metro*, 2:07-cv-1527-LSC (N.D. Ala. Mar. 10, 2014). That same Order also dismissed the case. *Id.* Following the Court's dismissal of the case, and well after the year period that it specified it would retain jurisdiction, Plaintiffs asked the Court to enforce certain parts of the Second Decree that they believed Metro to be flouting. The Court then restated that it no longer retained jurisdiction over the Second Decree, as the one-year

period has expired. *See* Order, *Black Warrior Riverkeeper, Inc. v. Metro*, 2:07-cv-1527-LSC (N.D. Ala. Mar. 2, 2017). No ancillary jurisdiction exists in this case under *Kokkonen*.

Plaintiffs argue that the Court still retains ancillary jurisdiction because while the Court's Order states it retains jurisdiction for one year, it also states that "the Court will enforce the settlement of the parties reflected in [the Second Decree]." Order, *Black Warrior Riverkeeper, Inc. v. Metro*, 2:07-cv-1527-LSC (N.D. Ala. Mar. 10, 2014). The Second Decree—which the Court itself did not sign—states that the Court:

> shall retain jurisdiction over this case for the purposes of resolving disputes arising under the Second Decree, entering orders modifying the Second Decree, or effectuating or enforcing compliance with the terms of the Second Decree.

(*See* Doc. 1 Ex. 2.) The Second Decree, stating a general retention of jurisdiction, obviously conflicts with the Court's Order stating that it will retain jurisdiction for one year. Where there is a dispute between what the parties agreed to on the one hand, and the Court's Order putting that Second Decree in effect, the Order controls. *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) ("To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough."). *Anago Franchising, Inc.* envisioned a situation in which "a district court may lack jurisdiction to enforce a settlement

agreement because it issued no order retaining jurisdiction[—or retaining jurisdiction for a limited time—]even though the parties expressly provide for ancillary jurisdiction in their stipulation for dismissal." *Id.* Thus, "[t]he district court must also issue an order specifically retaining jurisdiction in accordance with *Kokkonen* because ancillary jurisdiction allows a district court to effectuate its orders, not to enforce stipulations." *Id.* at 1280. The Court's Order provided for retention of jurisdiction for one year, and since that year has expired, it no longer retains ancillary jurisdiction.

Nor is *Kokkonen*'s requirement of an "independent basis for federal jurisdiction" satisfied by the "the Clean Water Act jurisdictional statement in the signed Second Decree." (Doc. 9 at 15.) The parties cannot contract to the Court's retention of ancillary jurisdiction, nor can they "by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy.'" *Sosna v. Iowa*, 419 U.S. 393, 398 (1975). The "independent basis" for federal jurisdiction referred to in *Kokkonen* cannot be satisfied by the parties' agreement that their dispute is governed by federal law.

Plaintiffs assert no other basis for subject matter jurisdiction in their Complaint, and the Court declines to speculate as to possible additional bases not

briefed by the parties. Thus, Plaintiffs' Count III for violation of the Second Decree is due to be DISMISSED without PREJUDICE.

**IV.** **CONCLUSION**

For the reasons stated above, Metro's Motion to Dismiss is hereby GRANTED. Plaintiff's Complaint is due to be DISMISSED without PREJUDICE. An Order consistent with this Opinion will be entered separately.

**DONE** AND **ORDERED** ON DECEMBER 18, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485